# Exhibit A

ELECTRONICALLY FILED - 2017 Jul 03 4:03 PM - PICKENS - COMMON PLEAS - CASE#2017CP3900795

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | THIRTEENTH JUDICIAL CIRCUIT |
| ) | |
| COUNTY OF PICKENS ) | COURT OF COMMON PLEAS |
| ) | |
| Jennifer Johnson and Laurie Seymour, ) | |
| ) | |
| Plaintiffs, ) | **SUMMONS** |
| ) | |
| v. ) | |
| ) | |
| JAX, LLC, d/b/a Golden Corral, ) | |
| ) | |
| Defendant. ) | |

**TO THE DEFENDANT ABOVE-NAMED:**

You are hereby summoned and required to answer the Complaint in this action, a copy of which is attached hereto and herewith served upon you, and to serve a copy of your answer to same upon the subscribed at 307 Pettigru Street, Greenville, South Carolina, 29601 within thirty (30) days after the service of same, exclusive of the day of such service. If you fail to answer same within the thirty (30) day period, Plaintiffs will apply to the Court for the relief demanded therein and judgment will be taken against you by default.

**The Horton Law Firm, P.A.**

s/ Jeremy R. Summerlin
**Jeremy R. Summerlin**
S.C. Bar No. 101383
jsummerlin@hortonlawfirm.net
**W. Andrew Arnold**
S.C. Bar No. 065311
aarnold@ hortonlawfirm.net
307 Pettigru Street
Greenville, SC  29601
864.233.4351   864.233.7142 fax

*Attorneys for Plaintiffs Jennifer Johnson and Laurie Seymour*

July 3, 2017

ELECTRONICALLY FILED - 2017 Jul 03 4:03 PM - PICKENS - COMMON PLEAS - CASE#2017CP3900795

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | THIRTEENTH JUDICIAL CIRCUIT |
| ) | |
| COUNTY OF PICKENS ) | COURT OF COMMON PLEAS |
| ) | |
| Jennifer Johnson and Laurie Seymour, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | **COMPLAINT** |
| v. ) | (JURY TRIAL DEMANDED) |
| ) | |
| JAX, LLC, d/b/a Golden Corral, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiffs Jennifer Johnson ("Johnson") and Laurie Seymour ("Seymour") (collectively "Plaintiffs") bring this claim against Defendant JAX, LLC, d/b/a Golden Corral, based on the allegations set forth below.

## PARTIES

1. Plaintiff Jennifer Johnson is a citizen and resident of the County of Anderson, South Carolina.

2. Plaintiff Laurie Seymour is a citizen and resident of the County of Pickens, South Carolina.

3. Defendant JAX, LLC d/b/ Golden Corral ("Defendant") is a North Carolina corporation that is licensed to do business in South Carolina. Defendant operates fifteen separate Golden Corral franchises in South Carolina, North Carolina, and Pennsylvania, including the Easley location where Plaintiffs were employed. The Easley location is in Pickens County.

4. At all times relevant to this Complaint, Defendant has continuously been an employer engaged in industries affecting commerce and has employed fifteen (15) or more employees for each working day in each of the twenty or more calendar weeks in the current or preceding calendar year.

ELECTRONICALLY FILED - 2017 Jul 03 4:03 PM - PICKENS - COMMON PLEAS - CASE#2017CP3900795

5.    Plaintiffs filed a timely charge of sexual harassment and retaliation with the Equal Employment Opportunity Commission. Plaintiff brings this action within ninety (90) days of receipt of the Notice of the Right to Sue.

## JURISDICTION

6.    This Court has subject matter jurisdiction over the claims in this lawsuit under 29 U.S.C. § 216(b), which provides state courts with concurrent jurisdiction over claims under the Fair Labor Standards Act; and under Title VII, and 42 U.S.C. § 2000e, *et seq.*, which provide state courts with concurrent jurisdiction over claims under Title VII of the Civil Rights Act of 1964, as amended. In addition, this Court has subject matter jurisdiction over Plaintiffs' claims under the South Carolina Wage Payment Act.

7.    This Court has personal jurisdiction over Defendant because (1) it is a company that is doing business in South Carolina, (2) it maintains its principal place of business in South Carolina, and (3) it has purposely availed itself of the rights and privileges afforded to it under South Carolina law.

## VENUE

8.    The Defendant operates in this state, and all events and omissions giving rise to the claims occurred in Pickens County. Further, upon information and belief, Defendant owns property and conducts business in Pickens County, South Carolina. Therefore, venue is proper in Pickens County.

## FACTS

9.    Plaintiff Johnson was a waitress at the Golden Corral in Easley, South Carolina (operated by Defendant) from approximately 2008 until October 2016.

10.    Plaintiff Seymour was a waitress at the Golden Corral in Easley, South Carolina (operated by Defendant) from approximately 2013 until October 2016.

## The Sexual Harassers

11. In 2015, David Oaks ("Oaks") became the general manager of the Golden Corral in Easley, where both Plaintiffs worked. Oaks is still employed by Defendant.

12. Cris Clarke ("Clarke") was a manager at the Easley location starting in approximately 2015. Upon information and belief, Clarke has been promoted to another position at JAX, LLC and is still employed by Defendant.

13. Juan Carlos Garcia ("Garcia") was a floor leader at the Easley location and had been employed there since approximately 2008. Garcia is still employed by Defendant.

14. Oaks, Clarke, and Garcia were Plaintiffs' supervisors during all or part of Plaintiffs' employment with Defendant. Oaks, Clarke, and Garcia all had authority to set, change, or influence the scheduling of Plaintiffs' work hours and schedule.

## The Sexually Hostile Working Environment

### *David Oaks*

15. Oaks, as general manager of the Easley location, would regularly make sexually inappropriate comments to both Plaintiffs, as well as to other employees in the presence of Plaintiffs. Plaintiffs also observed Oaks inappropriately touching other female employees. This conduct was continuing throughout Plaintiffs' employment.

16. Specifically, Oaks told Johnson and Seymour that they must be lesbians because they would not have sex with or flirt with Oaks or other members of management.

17. On multiple occasions, Oaks made inappropriate sexual comments about Plaintiffs' appearance whenever Plaintiffs would wear blue jeans to work.

18. On at least one occasion, Oaks brought binoculars to work and used them to ogle the backsides of female employees, including Plaintiffs, all the while making inappropriate sexual comments loud enough for the employees to hear.

ELECTRONICALLY FILED - 2017 Jul 03 4:03 PM - PICKENS - COMMON PLEAS - CASE#2017CP3900795

### *Juan Carlos Garcia*

19. Juan Carlos Garcia was a floor leader, and he was placed in charge of the waitresses, including Plaintiffs.

20. On a nearly daily basis in 2015 and 2016, Garcia would pull on the female employees' hair, including Plaintiffs, and if any employee protested, he would simply laugh and walk away. This conduct was continuing throughout Plaintiffs' employment.

21. Garcia would approach the female employees, including Plaintiffs, and forcibly tuck in their uniform shirts, shoving his fingers down deep into their pants and touching their backsides inside their pants. He did this on a nearly daily basis.

22. If a female employee's shirt came unbuttoned, Garcia would insist on buttoning up the shirt himself, and he would brush his hands and fingers on the female employees' chest during the process. Garcia performed this move on both of the Plaintiffs on multiple occasions.

23. Garcia would come up behind female employees, including Plaintiffs, and he would put his head on their shoulder, wrap his arms around them, and whisper sexually inappropriate comments to them. He did this on a nearly daily basis.

24. Plaintiffs also observed Garcia inappropriately touching other female employees.

### *Cris Clarke*

25. Cris Clarke was another manager at the Easley location who was right below David Oaks in terms of authority. In 2015 and 2016, Clarke engaged in conduct of a sexual nature directed at Plaintiffs and other female employees, and this conduct was continuing throughout Plaintiffs' employment.

26. On numerous occasions, Clarke slapped Plaintiffs on their backsides.

ELECTRONICALLY FILED - 2017 Jul 03 4:03 PM - PICKENS - COMMON PLEAS - CASE#2017CP3900795

27. Clarke regularly made inappropriate sexual comments to female employees. Plaintiffs also observed Clarke making inappropriate sexual comments to other female employees on a nearly daily basis.

28. When Plaintiffs' wore blue jeans to work, Clarke's sexually inappropriate comments to Plaintiffs increased in severity. When Plaintiffs would bend over, Clarke would comment about how pleased he was with Plaintiffs' appearance and would invite them into the office with him.

29. Plaintiffs observed Clarke inappropriately touching other female employees.

30. Plaintiffs learned that Clarke had sexual relations with a female employee in the restaurant's office. Plaintiffs later learned that Clarke had coerced the female employee into having sex with him by threatening her ability to get hours on the schedule.

31. On one occasion, shortly before Plaintiffs resigned in October 2016, Clarke approached Seymour and held out several gumballs towards her. He asked Seymour, "Do you want to suck on my balls?" Seymour was offended by Clarke's conduct. Johnson also observed this sexually inappropriate act by Clarke.

32. On at least one occasion, Clark told Seymour that if she would go out on a date with him, then he would give her better hours, an offer which Seymour rejected.

33. Upon information and belief, another manager, Matthew Barrs, had sex with female employees in the restaurant's freezer and in the office, without repercussions. Plaintiffs and other female employees were aware of Barrs's actions.

34. Plaintiffs observed that certain female employees who cooperated with management's demands for sexual favors were provided with a better schedule and were not required to either work off the clock or to perform other menial tasks, such as bussing the tables.

## Management's Retaliation for Complaints

35. Plaintiffs objected to the sexual harassment of Oaks, Garcia, and Clarke, both contemporaneous with the harassment and later to Cristian Shinkle, the HR representative for Defendant. However, the sexually oppressive conduct continued unabated and Plaintiffs suffered retaliation after making the complaints.

36. Employees were directed to call Christian Shinkle, the HR representative for Defendant, to report any issues with sexual harassment. Plaintiffs called Shinkle in 2016 to complain on multiple occasions about the sexually oppressive conduct that they were experiencing at the hands of Oaks, Garcia, and Clarke, and Plaintiffs also spoke with Shinkle in person in 2016 when he would visit the restaurant. Shinkle would then relay the complaints directly back to the harassers, who would retaliate against Plaintiffs and any other employees who complained. No remedial actions were taken by Defendant to alleviate the unending barrage of sexual harassment.

37. On more than one occasion in 2015 and 2016 after Plaintiffs or another female employee complaint to Shinkle about the harassment, Garcia would call a store meeting and would threaten all the employees with their hours being cut if they continued to complain. On one occasion, Garcia told the assembled employees that "anyone who calls corporate will be punished."

38. Several months before resigning in October 2016 and after making complaints to Shinkle, Plaintiffs hours were cut. Seymour asked Clarke if she could get more hours, and Clarke responded by stating, "If you help me, I'll help you," which Seymour understood to mean that if she would perform sexual favors for him, then she would be given a better work schedule. Seymour based this understanding on a previous conversation where Clarke specifically told her that she needed to do sexual favors for members of management in exchange for better treatment in the workplace.

ELECTRONICALLY FILED - 2017 Jul 03 4:03 PM - PICKENS - COMMON PLEAS - CASE#2017CP3900795

39.     After Seymour complained to Shinkle about Garcia in the summer of 2016, Garcia pulled Seymour aside and told her that she was "done" because she had complained to HR about Garcia's sexually inappropriate conduct. Garcia told Seymour not to call HR again and told her to "keep quiet." Thereafter, Garcia would loudly make abusive and embarrassing comments about Seymour in the dining room in front of customers and other employees, including calling her "disgusting" and telling her that she smelled bad. Seymour was mortified at Garcia's retaliatory conduct.

40.     Defendant did not display any the legally required posters and information regarding any state or federal anti-discrimination laws or other federal laws governing minimum wage or overtime. As a result, Plaintiffs were unaware of their rights under state and federal law to work in an environment that was not sexually toxic.

41.     Plaintiffs suffered emotional stress and anguish from the constant sexually hostile and abusive conduct of Oaks, Garcia, and Clarke. The sexually hostile conduct was so pervasive and extreme that Plaintiffs were forced to resign their employment from Defendant in October 2016.

**(Unpaid Overtime and Minimum Wage)**

42.     Plaintiffs were employees of Defendant as defined under the FLSA and the South Carolina Wage Payment Act.

43.     Defendant regularly required Plaintiffs to work off the clock before their shifts began and to clock out at the end of a shift and continue working for several hours for no pay.

44.     Defendant regularly required Plaintiffs to perform non-tipped duties, such as cleaning and washing dishes, at a pay rate of $2.13 per hour. Often these duties were assigned to Plaintiffs after they had complained about the sexual harassment noted above.

## FOR A FIRST CAUSE OF ACTION
### (Violation of Title VII – Sexual Harassment)

45.   Plaintiffs incorporate by reference all prior allegations into this cause of action

46.   During the course of Plaintiffs' employment with Defendant, Plaintiffs were subjected to sexual harassment by Defendant's management team. This conduct was severe and pervasive. The sexual harassment by Oaks, Garcia, and Clarke created a sexually hostile work environment for Plaintiffs and other female employees.

47.   Due to Plaintiffs' frequent complaints in 2015 and 2016 to Shinkle, the HR representative of Defendant, Defendant had notice and knowledge of the inappropriate sexual conduct of Oaks, Garcia, and Clarke against Plaintiffs.

48.   Defendant failed to take prompt remedial action and instead allowed Oaks, Garcia, and Clarke to continue harassing Plaintiffs and other female employees and to retaliate against them for making the complaints.

49.   The inappropriate sexual conduct of Oaks, Garcia, and Clarke against Plaintiffs and other female employees was so pervasive and severe that the terms and conditions of Plaintiffs employment were adversely altered.

50.   As a result of such harassment, Plaintiffs were humiliated, embarrassed, and degraded, and they experienced emotional distress.

51.   Defendant's failure to take prompt remedial action against Oaks, Garcia, and Clarke was willful and intentional, and violated Title VII of the Civil Rights Act of 1964, as amended.

52.   Defendant's conduct entitles Plaintiffs to an award of punitive damages under Title VII.

## FOR A SECOND CAUSE OF ACTION
### (Violation of Title VII – Retaliation)

53.   Plaintiffs incorporate by reference all prior allegations into this cause of action

ELECTRONICALLY FILED - 2017 Jul 03 4:03 PM - PICKENS - COMMON PLEAS - CASE#2017CP3900795

54. Plaintiffs opposed Oaks, Garcia, and Clarke's attempts to harass them, making it clear to them that Oaks, Garcia, and Clarke's advances and conduct were unwelcome.

55. Plaintiffs made multiple good faith complaints about the sexual harassment to Defendant, to no avail. Plaintiffs had a good faith belief that Oaks, Garcia, and Clarke's conduct, which Plaintiffs were opposing, was unlawful.

56. Plaintiffs' hours were cut after they complained to HR about the sexual harassment, and they suffered other retaliation for their complaints, including being forced to work off the clock for free or to work at less than minimum wage doing non-tipped work, such as cleaning or washing dishes. They were also subject to additional abuse and humiliation by management.

57. Plaintiffs' working environment became so toxic and unbearable that no reasonable person could be expected to work in such conditions. Plaintiffs were constructively discharged in October 2016.

58. Plaintiffs suffered lost wages and benefits because of their unlawful constructive discharge.

59. Plaintiffs suffered emotional distress because of their unlawful constructive discharge.

### FOR A THIRD CAUSE OF ACTION
(Fair Labor Standards Act—Failure to Pay Minimum Wage)

60. Plaintiffs incorporate by reference all prior allegations into this cause of action.

61. Defendant is an "employer" for purposes of the Fair Labor Standards Act, 29 U.S.C. § 203(s), because it has annual gross sales or business of at least $500,000.00 and has employees engaged in interstate commerce. In addition, Plaintiffs are covered employees under the FLSA because they were involved in interstate commerce on a regular basis during their employment with Defendant.

ELECTRONICALLY FILED - 2017 Jul 03 4:03 PM - PICKENS - COMMON PLEAS - CASE#2017CP3900795

ELECTRONICALLY FILED - 2017 Jul 03 4:03 PM - PICKENS - COMMON PLEAS - CASE#2017CP3900795

62. Plaintiffs were employees of Defendant for purposes of the Fair Labor Standards Act during all times relevant to this Complaint.

63. Defendant has failed to pay Plaintiffs an hourly rate of at least the minimum wage of $7.25 per hour for each and every hour worked, as required by Section 6(a)(1)(C) of the FLSA, 29 U.S.C. § 206(a)(1)(C).

64. Specifically, Plaintiffs were regularly required to work off the clock for no pay and were regularly required to performed non-tipped work, such as cleaning or washing dishes, at an hourly rate of $2.13.

65. Plaintiffs are entitled to back wages at the minimum wage rate of $7.25 per hour for every hour worked, pursuant to section 16(b) of the FLSA, 29 U.S.C. § 216(b).

66. The failure of Defendant to compensate Plaintiffs class at least minimum wage was knowing, willful, intentional, and done in bad faith.

67. Plaintiffs are also entitled to liquidated damages equal to the amount of unpaid minimum wages due to them under the FLSA, pursuant to section 16(b) of the FLSA, 29 U.S.C. § 216(b).

68. The work and pay records of Plaintiffs are in the possession, custody, and/or control of Defendant, and Defendant is under a duty pursuant to section 11(c) of the FLSA, 29 U.S.C. § 211(c), and pursuant to the regulations of the United States Department of Labor, to maintain and preserve such payroll and other employment records from which the amount of Defendant's liability can be ascertained. Plaintiffs request an order of this Court requiring Defendant to preserve such records during the pendency of this action.

69. Plaintiffs are also entitled to an award of reasonable attorneys' fees and costs incurred in prosecuting this action, pursuant to 29 U.S.C. § 216(b).

## FOR A FOURTH CAUSE OF ACTION
### (Fair Labor Standards Act–Failure to Pay Overtime Wages)

70. Plaintiff incorporates all allegations of paragraphs above into this cause of action.

71. Plaintiffs routinely worked in excess of forty (40) hours per workweek for Defendant. Plaintiffs were regularly required to work off the clock for several hours each shift with no pay, and these hours were not counted for purposes of determining whether Plaintiffs were entitled to time and a half for any hours worked over 40. Upon information and belief, Plaintiffs would work more than 40 hours a week without getting paid time and half.

72. Defendant failed to pay Plaintiffs at the rate of one-and-a-half times their regular rate of pay for all hours worked in excess of forty hours weekly as required by section 7(a) of the FLSA, 29 U.S.C. § 207(a).

73. Plaintiffs are entitled to back wages at the rate of one-and-a-half times their regular rate of pay for all overtime hours worked in excess of forty hours per week, pursuant to section 16(b) of the FLSA, 29 U.S.C. § 216(b).

74. The failure of Defendant to compensate Plaintiffs for overtime work as required by the FLSA was knowing, willful, intentional, and done in bad faith.

75. Plaintiffs are also entitled to liquidated damages equal to the amount of unpaid overtime compensation due to them under the FLSA, pursuant to section 16(b) of the FLSA, 29 U.S.C. § 216(b).

76. Plaintiffs are also entitled to an award of reasonable attorneys' fees and costs incurred in prosecuting this action, pursuant to 29 U.S.C. § 216(b).

## FOR A FIFTH CAUSE OF ACTION
### (South Carolina Payment of Wages Act)

77. Plaintiff incorporates all allegations of paragraphs above into this cause of action.

ELECTRONICALLY FILED - 2017 Jul 03 4:03 PM - PICKENS - COMMON PLEAS - CASE#2017CP3900795

ELECTRONICALLY FILED - 2017 Jul 03 4:03 PM - PICKENS - COMMON PLEAS - CASE#2017CP3900795

78. Defendant is an "employer" as defined by the South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10(1), because it employs individuals within the State of South Carolina.

79. Defendants have failed to pay Plaintiffs all wages due, as required by Sections 41-10-40 and -50 of the Act, because of Defendant's requirement that Plaintiff work additional hours off the clock without being paid by Defendant.

80. Defendants' failure to pay Plaintiffs all wages due is willful, without justification, and in violation of the duty of good faith and fair dealing.

81. Pursuant to Section 41-10-80(C) of the Act, Plaintiffs are entitled to recover in this action an amount equal to three times the full amount of their unpaid wages, or their wrongfully deducted wages, plus costs and reasonable attorney's fees.

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor and against the Defendant as follows:

a. Declare that Defendant's acts and conduct constitute impermissible sexual harassment and unlawful retaliation, in violation of Title VII and award such injunctive or other equitable relief as is fair and just;

b. Award Plaintiffs all compensation and benefits due that were lost as a result of Defendant's unlawful employment practices described above, including but not limited to lost wages in the form of back and front pay, bonuses, interest and other benefits in amounts to be determined at trial;

c. Award Plaintiffs past and future non-pecuniary losses resulting from the unlawful practices complained of above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem, and loss of civil rights in amounts to be determined at trial;

d. Award Plaintiffs punitive damages for Defendant's malicious and reckless conduct as described above in amounts to be determined at trial;

e. Declare that Defendant has willfully and in bad faith violated the minimum wage and overtime compensation provisions of the FLSA, and have deprived Plaintiffs of their rights to such compensation;

f. Order Defendant to provide a complete and accurate accounting of all the minimum wages and overtime compensation to which Plaintiffs are entitled;

g. Award monetary damages to Plaintiffs in the form of back pay for unpaid minimum wages and overtime compensation due, together with liquidated damages in an equal amount;

h. Grant injunctive relief to Plaintiffs by ordering Defendant to amend its wage and hour policies to comply with applicable laws;

i. Award pre-judgment interest;

j. Award treble damages pursuant to the South Carolina Payment of Wages Act;

k. Award attorneys' fees and costs; and

l. Award Plaintiff such other legal and equitable relief as this Court may deem proper.

*[signature and date on following page]*

ELECTRONICALLY FILED - 2017 Jul 03 4:03 PM - PICKENS - COMMON PLEAS - CASE#2017CP3900795

ELECTRONICALLY FILED - 2017 Jul 03 4:03 PM - PICKENS - COMMON PLEAS - CASE#2017CP3900795

        Respectfully Submitted,

        **The Horton Law Firm, P.A.**

        <u>s/ Jeremy R. Summerlin</u>
        **Jeremy R. Summerlin**
        S.C. Bar No. 101383
        jsummerlin@hortonlawfirm.net
        **W. Andrew Arnold**
        S.C. Bar No. 065311
        aarnold@hortonlawfirm.net
        307 Pettigru Street
        Greenville, SC 29601
        864.233.4351   864.233.7142 fax

        *Attorneys for Plaintiffs Jennifer Johnson and Laurie Seymour*

July 3, 2017